[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action for dissolution of marriage was referred to' the Regional Family Trial Docket from the Judicial District of New Haven at Meriden. Prior to the commencement of trial the parties reached agreement on a parenting plan for custody and visitation issues and signed a written CT Page 5505 agreement dated March 28, 2001. This agreement was approved by the court on April 2, 2001 and will be incorporated by reference as part of the court's decree. Over 4 trial days the parties presented evidence on financial issues including child support, alimony, health insurance, division of assets and liabilities, as well as counsel fees. The court heard testimony from the parties, a business evaluator, a real estate appraiser, and a policeman. Many exhibits were entered into evidence. The court has considered all of the credible evidence and all of the statutory criteria for the orders to be issued. The statutory criteria will not be restated here. The court makes the following findings of fact and orders.
The court finds that it has jurisdiction over the marriage. One party has resided in Connecticut continually for more than one year prior to the bringing of this action. The parties were married on September 12, 1987 in Orange, Connecticut. They have 2 minor children issue of the marriage, namely Alexandra L. Bubaris, born September 6, 1990, and Nicholas C. Bubaris, born November 5, 1992. No other minor children have been born to the wife since the date of the marriage. The parties have not been recipients of state assistance. "The marriage of the parties has broken down irretrievably with no hope of reconciliation.
The plaintiff husband is 55 years old and in good general health. His first marriage ended in divorce without children. He has a bachelor's degree from Cornell University in civil engineering and has a master's degree from Penn. State in traffic engineering. He worked for the Town of West Hartford for many years and receives a pension of $125 per week. He has operated his own traffic engineering firm since 1987. His earnings from this business are approximately $58,000 per year or $1,115 per week. He is a 1/3 partner in a real estate partnership, Bubaris Enterprises, with his two brothers. The partnership owns an apartment building in Queens which was bequeathed to them by their father in 1971. The plaintiff receives consistent income from the partnership in the approximate amount of $62,000 per year or $1,192 per week.
The defendant wife is 41 years of age and is in good general health. This is her first marriage. She has a bachelor's degree from Southern Connecticut State University which she received prior to the marriage. In 1993-1995 she took pre-veterinary courses at Quinnipiac University. When she was unable to gain admittance to Tufts University school of veterinary science, she was accepted to the Yale University school of nursing where from 1997-2000 she studied and obtained her degree as a Nurse Practitioner. She is employed as a Nurse Practitioner at Associates In Family Health Care in Bridgeport. She earns $55,000 per year or $1,057 per week. CT Page 5506
Discord between the parties began immediately. There was evidence that both parties contributed to this unhappy state of affairs. The plaintiff husband is fastidious about the upkeep and cleanliness of the marital home. The defendant wife never felt that she could live up to the expectations of her husband. She took in stray cats to the consternation of her husband and they damaged the rugs and furniture. The parties never were in accord about the husband's desire to spend most of his leisure time doing home remodeling and renovations. A major bone of contention developed in the early 1990's when the defendant wife decided that she wanted to become a veterinarian. The parties argued bitterly about the advisability, timing and logistics of such a course of action. Both parties have valid reasons for the positions they took. In the end, the parties simply turned out to be mismatched in terms of their personalities and goals. Neither party is found to be more at fault for the breakdown in the marriages
The parties own a house at 177 Center Road in Woodbridge where they lived until their separation in June, 1998. The parties signed an agreement at that time which called for the husband to move out of the marital home and for the parties to have a trial separation of one year during which they would receive marital counseling. The husband moved from the home to a rental condominium where he still resides. The wife still resides in the marital home. The joint marital counseling never took place. The house was owned by the husband prior to the marriage. He had purchased it in 1974 for $60,000. He had made substantial improvements and renovations prior to marrying the defendant. These improvements cost approximately $115,000. After they married, the parties made further additions and improvements which cost approximately $143,000. Most of these funds came from refinancing the Queens property owned by Bubaris Enterprises. In 1990 the husband quit claimed an undivided one-half interest in the house to the wife. The house has a present value of $320,000 and is encumbered by a mortgage in the present amount of $114,000.
The defendant has a deep emotional attachment to the marital home and he wants to retain it. He has offered to allow the defendant to remain in the home for 3 more years at which time the children will no longer be attending the local elementary school. He offers to pay the defendant $17,500 for her equitable interest in the property. The defendant was never really fond of the house but seeks to have the house awarded to her. Both parties have valid arguments on this issue. The house was acquired prior to the marriage and the plaintiff has invested much of his time in renovations and repairs. It is equitable that he ultimately be permitted to resume title and occupancy. The idea of allowing the defendant and children to remain in the house for three more years is a good one. But, the plaintiff must recognize that the defendant is CT Page 5507 entitled to more than $17,500. She has been a joint owner since 1990. She has contributed to the reduction of the mortgage and has participated in the renovations and upkeep. It is equitable that she share equally in the present equity in the property. Each would have equity of $103,000. As a practical matter, the defendant will need this money to obtain another house within the school district, a result which both parties want. The plaintiff should have no trouble refinancing the property to obtain this sum to pay the defendant.
At the time of the marriage the defendant wife was working at Hartford Insurance Company, a job which she did not enjoy. The parties soon agreed that it would be a good idea for the defendant to come to work at the plaintiff's firm and to learn the traffic engineering business. She acted as a technician, and did marketing, planning, billing and collection. Both parties were pleased with her contribution to the business. The defendant also took formal training in traffic engineering and took an active role in running the company. In 1990 the parties decided that they would be eligible for more government contracts if the business were designated as a Disadvantaged Business Enterprise. They decided to embark on a campaign to obtain that designation. This involved having the plaintiff husband transfer 60% of the stock to the defendant wife and having the defendant become president of the corporation. The name of the corporation was changed from James G. Bubaris, P.E., P.C. to Bubaris Traffic Associates, P.C. The parties made applications to the State of Connecticut which demonstrated that the business was truly owned and operated by a woman. They received the Disadvantaged Business Enterprise designation and saw a significant increase in income.
As time passed, the defendant's participation in the business decreased as she began taking courses to become a veterinarian. The plaintiff wanted her to stay actively involved in the business in order to keep the disadvantaged business designation. The defendant wanted to pursue her goal of changing her career. Although the defendant remains as President and 60% owner of the business, she has not been involved in any capacity since 1996.
The value of Bubaris Traffic Associates, P.C., was disputed. The plaintiff husband offered expert testimony from a business evaluator that the company has no market value. The defendant wife testified that she thinks her 60% stock ownership in the business has a value of $75,000. There is no question that it is an established business which can be relied upon to produce steady income to the plaintiff husband. But, it has no market value apart from the participation and expertise of the plaintiff. Although the defendant played a valuable role in the business when she was involved, she has been out of the business for over five years. The market value of the business is found to be zero. The CT Page 5508 plaintiff will be ordered to transfer her stock to the plaintiff so that he can continue to run the business and use his income to pay his child support.
The value of the plaintiff's partnership interest in Bubaris Enterprises is difficult to determine. This is because neither party offered expert testimony as to the value of the Queens building. The plaintiff offered testimony that he thinks the property has a fair market value of $1,815,000 and that his 1/3 partnership interest is worth $155,000. The defendant wife testified that the plaintiff told her in 1997 that the building was worth $2,000,000, and that in 1994 he said it was worth $4,000,000. The plaintiff admits that he may have used the figure of $2,000,000 in discussions with the defendant but denies ever using the figure of $4,000,000. The plaintiff does not participate in the management of the building but receives income of about $62,000 per year plus additional sums in excess of $100,000 every few years when the property is refinanced. It is clear that the plaintiff's partnership interest is worth more than $155,000. But, the evidence is insufficient to assign a specific value. "In distributing the assets of the marital estate, the court is required by Section 46b-81 to consider the estate of each of the parties. Implicit in this requirement is the need to consider the economic value of the parties' estates. The court need not, however, assign specific values to the parties' assets." Bornemann v. Bornemann,245 Conn. 508, 530 (1998).
The defendant asks that the court assign to her 1/3 of the plaintiff's partnership interest. The plaintiff asks that he be able to keep his partnership interest because it was acquired prior to the marriage. It certainly is a part of the estate of the plaintiff which is subject to assignment pursuant to C.G.S. Section 46b-81. But, this asset is a significant source of funds for the payment of child support by the plaintiff. Having considered all of the statutory criteria, the plaintiff will be allowed to retain this asset acquired prior to the marriage.
In addition to the marital home, the Queens real estate partnership, and the traffic engineering business, the plaintiff husband came to the marriage with an IRA of approximately $5,000 as well as about $115,000 in cash from a refinancing of the Queens property. The defendant wife came to the marriage with approximately $57,000 in cash received from the sale of her condominium. Most of the husband's cash was spent on improvements to the marital residence. The wife's cash was used on a real estate investment — a condominium in Southington — which turned sour and was a total loss. Neither party is more responsible for this loss. They simply hit the market at the wrong time.
The defendant wife has paid for her attorney fees for this action by CT Page 5509 borrowing money from her brother. The plaintiff husband has paid his attorney fees of $11,000 from joint funds.
The parties have substantial life insurance. The plaintiff has a $200,000 whole life policy on his life with Northwestern Mutual Life. This policy has a cash value of $10,881. The plaintiff has a $200,000 whole life policy on his life with Allstate. The defendant has a sister policy with Allstate on her life in the amount of $100,000. These Allstate policies have a total cash value of $3,463. These policies are all affordable to the parties. The plaintiff has a term policy on his life with ASCE in the amount of $330,000. There is a sister policy on the defendant's life for $20,000.
The plaintiff husband has the following retirement accounts:
 Approximate current value
Merrill Lynch No. 812-84280 $13,174.70 Oppenheimer Funds No. 330-3301182104 $11,575.83 Merrill Lunch No. M981388507 $66,128.36 Prudential Securities No. OLK-8 10911 $20,665.97
$111,544.86
The defendant wife has the following retirement accounts:
Merrill Lynch No. 812-89W52 $2,248.47 Prudential Securities No. OLK-R37416 $7,369.18
$9,618.18
The husband's Merrill Lynch retirement account was opened during the marriage with $60,000 from refinancing the Queens property. There is no reason why this account should not be subject to division along with the other retirement accounts. The husband's Prudential Security retirement account was approximately $5,000 at the time of the marriage. The husband should retain this premarital amount free from division.
The plaintiff husband claims that he is owed $1,008 for excess child support and alimony payments to the defendant wife from August 31, 2000 to September 21, 2000. This claim was unproven and will not be granted.
The court issues the following orders:
1. The marriage of the parties is dissolved.
2. The parties shall have joint legal custody of the minor children. Physical custody shall be shared in accordance with the Parenting Plan CT Page 5510 dated March 28, 2001 which was filed with the court on April 2, 2001 and which is incorporated by reference into the degree.
3. The plaintiff husband shall pay to the defendant wife child support in the amount of $390 per week. Child support shall be payable until each child attains the age of 18 years, but if still in high school, support shall continue through high school graduation but not beyond the age of 19 years. In addition, the husband shall pay to the wife 54% of the total cost of daycare expenses incurred by the wife. The present daycare expense incurred by the wife is $213 per week. Therefore, the husband's present obligation is $115 per week. However, the court expects this figure to change over time, and that the husband's obligation will be adjusted accordingly.
4. The plaintiff husband shall maintain medical insurance for the children through his retirement plan with the Town of West Hartford. This coverage will end when the husband turns 62. The court makes no order at this time as to the obligation to provide insurance coverage beyond the husband's 62nd birthday. The husband shall pay 54% and the wife shall pay 46% of the cost of unreimbursed medical and dental expenses of the children in accordance with the Guidelines.
5. The defendant wife is ordered to convey her interest in the marital home to the plaintiff husband within 30 days. The plaintiff is ordered to pay to the defendant the sum of $103,000 on the earlier event of the defendant's death, the refinance of the marital home or May 1, 2004. The plaintiff shall execute a promissory note for this indebtedness which shall be secured by a second mortgage on the marital home. The promissory note shall bear Interest at the rate of 6%, and shall contain customary language for the payment of attorney fees and costs in the event of collection. There shall be no prepayment penalty. The defendant shall have until July 1, 2004 to relocate from the marital home. She shall have exclusive possession of the marital home until that date if she does not relocate sooner. During the time that the defendant is in possession of the marital home she is ordered to pay to the plaintiff, on the first day of each month, a sum equal to 1/12 of the yearly mortgage, taxes, and home insurance expenses. The defendant shall be responsible for paying all of the utility and household expenses during her possession. The defendant shall also be responsible for minor repairs and maintenance during her possession of the property. Any necessary repairs over $250 shall be the responsibility of the plaintiff. The major repairs shall be made at the defendant's sole discretion.
6. The parties are ordered to attempt to resolve their differences "regarding personal property within 30 days. If they are unable to reach agreement, the parties are referred to Family Relations for CT Page 5511 investigation, conciliation, and report.
7. The wife is ordered to transfer her stock in Bubaris Traffic Associates, Inc. within 30 days. The husband shall own the stock in that corporation free and clear of any claim of the wife.
8. The husband shall retain his partnership share in Bubaris Enterprises free and clear of the claims of the wife.
9. Within 30 days the husband is ordered to transfer to the wife his interest in the Toyota Avalon. She shall own that automobile free and clear of any claim of the husband.
10. The plaintiff shall maintain his life insurance with Northwestern Mutual in the amount of $200,000 and shall name as beneficiary the defendant wife, as trustee for the benefit of the minor children as long as they are minors and not emancipated. The Plaintiff may terminate his Allstate life insurance policy in the amount of $200,000. The defendant wife shall maintain her life insurance with Allstate in the amount of $100,000 and shall name as beneficiary the plaintiff husband, as trustee for the benefit of the minor children as long as they are minors and not emancipated. The parties shall split equally the cash value of the Northwestern Mutual and Allstate policies. The plaintiff husband may terminate his term life insurance with ASCE.
11. The plaintiff shall be entitled to take the younger child, Niclolas, as a dependency exemption as long as he is entitled to do so as a matter of federal law and as long as he is current in his child support. The defendant wife shall be entitled to take the older child, Alexandra, as a dependency exemption as long as she is entitled to do so as a matter of federal law.
12. Within 30 days the plaintiff shall pay to the defendant the sum of $5,500 toward her counsel fees.
13. Neither party shall pay alimony to the other party. I
14. The parties shall split equally the following accounts:
 Capitol Region Credit Union savings account No. 2277 Capitol Region Credit Union savings account No. 638 Salomon Smith Barney stock account No. 389-13957-11-547 Merrill Lynch profit sharing No. 812-05J29 Prudential Securities account No. OLK-243170 Salomon Smith Barney bond account No. 389-13957-11-547
CT Page 5512
15. The plaintiff husband shall retain the premarital value of $5,000 in his Prudential Security retirement account. All other retirement funds of the parties shall be equalized between the parties. This equalization shall be effectuated by transfers, assignments, and/or Qualified Domestic Relations Orders as required. Both parties are ordered to sign any documents necessary to effectuate this equalization. The provisions of this paragraph are a property order and not alimony. The court shall retain jurisdiction to carry out the provisions of this paragraph.
16. The fees and costs of Attorney Helen D. Murphy, attorney for the minor children, are approved. Within 30 days the parties are ordered to pay the following:
The plaintiff is ordered to pay $1,959 less a previous credit of $797.50 for a total of $1,161.50. The defendant is ordered to pay $1,959.
17. The plaintiff shall pay the VISA credit card debt shown on his financial affidavit and shall indemnify and hold the defendant harmless from liability for that obligation. The defendant shall pay her Stafford loans, the debt to Richard Capiello, and any credit card debt (other than the VISA to be paid by the plaintiff) shown on her financial affidavit and shall indemnify and hold the plaintiff harmless from liability for that obligation.
JOHN W. PICKARD JUDGE OF THE SUPERIOR COURT